# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CORUS INTERNATIONAL TRADING LIMITED, | ) ) ) | |
| Plaintiff, | ) ) | No. 10 C 3572 |
| v. | ) ) | Hon. Amy J. St. Eve |
| EREĞLI DEMIR VE ÇELIK FABRIKALARI, T.A.Ş., | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff, Corus International Trading Limited ("Corus"), filed the instant lawsuit against Defendant Ereğli Demir ve Çelik Fabrikalari, T.A.Ş. ("Erdemir"), seeking $4,800,000 in damages under theories of breach of contract and promissory estoppel. (R. 1.) On September 24, 2010, Erdemir filed a motion to dismiss the complaint. Defendant argues that the Court lacks personal jurisdiction over it and that a forum-selection clause requires the parties to litigate the matter in Turkey. (R. 23.) The Court grants Defendant's motion, with prejudice.[1]

## BACKGROUND

Corus is a Delaware corporation engaged in the business of sourcing and supplying commercial-grade steel to companies throughout the world. (R. 1 at 1.) Its principal office is in Illinois. (*Id.*) Erdemir is a foreign corporation organized and existing under the laws of Turkey.

---

[1] The Court commends both parties for the superior quality of their briefing.

(*Id.*)  Its headquarters are in Ankara, Turkey, and it conducts its operations primarily from Zonguldak and Istanbul in the same country.  (R. 23-1 at 7.)

On August 8, 2008, Corus sent Erdemir a fax, requesting to purchase the latter's flat-steel products.  (R. 23-2 at 3.)  This contact led the parties to agree to the production and sale of some 16,000 metric tons of steel plates at a price of roughly $17.6 million.  (R. 53-7 at 1.)  The parties conducted the relevant negotiations exclusively in Turkey.  (R. 23-2 at 3.)  On October 2, 2008, Corus issued Purchase Orders Nos. 1580 and 1582 to Erdemir for approximately 10,000 tons.  (R. 53-7 at 1.)  On October 20, 2008, Plaintiff issued Purchase Order Nos. 3859, 3860, and 3861 for an additional 6,000 tons.  (*Id.*)  Plaintiff observes that those standard purchase orders included a choice-of-law provision, which provides that "[a]ll actions or proceedings arising . . . from this contract shall be brought only in the Circuit Court of Cook County in the State of Illinois or in the U.S. District Court for the Northern District of Illinois, Eastern [D]ivision and seller hereby consents and submits to the jurisdiction of such courts for the purpose of such actions or proceedings."  (*Id.* at 2.)  Neither party argues that Erdemir signed or otherwise assented to this choice-of-law term.  (R. 53; R. 56.)

On November 12, 2008, Corus wired $12,853,009 to Erdemir, which in turn delivered the first 10,000 tons of steel plates to Plaintiff in Turkey on November 21, 2008.  (R. 53 at 10; R. 23-1 at 8.)  Erdemir delivered the second shipment of 6,000 tons to Plaintiff in Turkey on December 18, 2008.  (*Id.*)

In December 2008, after sending the previously described purchase orders, Corus signed Sales Contracts Nos. 68142 and 68150 ("the Sales Contracts").  (R. 53 at 10; R. 23-1 at 7.)  These contracts specified that the parties executed them in Turkey.  (R. 23-2 at 21, 33.)  The

2

Sales Contracts contained two important provisions. The first is a merger clause, which provided that "[t]he entire agreement between the parties is expressed herein . . . . All previous agreements, promises, proposals, representations, understandings and negotiations between the parties hereto which relate in any way to the subject matter of this agreement are hereby deemed to be null and void." (*Id.*) The second, entitled "jurisdiction," states that, "[i]n case of any dispute, controversy, claim or argument in connection with this contract, both parties shall make every possible effort to settle such disputes . . . amicably between themselves. If no such amicable agreement can be reached, then such dispute, controversy, claim or argument shall be finally settled by Kdz. Eregli Courts and Enforcement Offices in Kdz. Eregli/Turkey according to the Turkish law." (*Id.*)

Plaintiff alleges that its customer rejected the steel products provided by Erdemir "due to various alleged defects." (R. 1 at 2.) According to the Complaint, this problem induced the parties to negotiate the proper compensation of Corus by Erdemir. (*Id.*) The parties entered into an alleged agreement on April 7, 2009 ("the Settlement Agreement"), pursuant to which Erdemir promised to pay Corus $6,914,000 by selling it further steel at reduced prices. (*Id.*) Plaintiff alleges, however, that Erdemir continuously delayed paying the remaining balance due to improvements in the steel markets in the summer and fall of 2009. (*Id.* at 3.) This led the parties to engage in a further meeting on November 13, 2009. (*Id.*) At that meeting Erdemir allegedly agreed to pay the outstanding balance of $4,800,000 in equal quarterly payments, beginning in March 2010. (*Id.*) The Complaint alleges that, on April 22, 2010, Erdemir rejected Plaintiff's invoice and declared that there was no agreement between the parties. (*Id.*)

Plaintiff seeks $4,800,000 in damages under breach-of-contract and promissory-estoppel theories. (R. 1 at 4.) On September 24, 2010, Defendant filed the instant motion to dismiss. (R. 23.) It argues, first, that this Court lacks personal jurisdiction over it and, second, that the Sales Contracts' forum-selection clause requires dismissal. (R. 23-1.)

## LEGAL STANDARD

It is well established that the due-process test for personal jurisdiction requires that a defendant have minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.,* 326 U.S. 310, 316 (1945) (citations omitted). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253 (1958).

Two types of personal jurisdiction exist: general and specific. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 414-16 (1984); *Hyatt Int'l Corp. v. Coco,* 302 F.3d 707, 713 (7th Cir. 2002). "General jurisdiction is for suits neither arising out of nor related to the defendant's contacts with the State, and is permitted only where the defendant conducts continuous and systematic general business within the forum state." *GCIU-Employer Retirement Fund v. Goldfarb Corp.,* 565 F.3d 1018, 1023 (7th Cir. 2009); *see also Helicopteros*, 466 U.S. at 416. On the other hand, specific jurisdiction "refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *GCIU-Employer Retirement,* 565 F.3d at 1023 (citation omitted)

ANALYSIS

I.  **The Court Lacks General Jurisdiction over Defendant**

A court has general jurisdiction over a person if the latter has "continuous and systematic business contacts" with the forum state. *Helicopteros*, 466 U.S. at 415-16. The Seventh Circuit has recently emphasized that "[t]his is a demanding standard that requires the defendant to have such extensive contacts with the state that it can be treated as present in the state for essentially all purposes." *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 426 (7th Cir. 2010) (citations omitted). The court of appeals explained that the standard is demanding "because the consequences can be severe: if a defendant is subject to general jurisdiction in a state, then it may be called into court there to answer for any alleged wrong, committed in any place, no matter how unrelated to the defendant's contacts with the forum." *Id.*

To determine whether they can exercise general jurisdiction over a defendant, courts typically appeal to a five-part test. *Annie Oakley Enters., Inc. v. Sunset Tan Corporate & Consulting*, L.L.C., 703 F. Supp. 2d 881, 887 (N.D. Ind. 2010) (citing *Helicopteros*, 466 U.S. at 416). The five factors are: (1) whether and to what extent the defendant conducts business in the forum state; (2) whether the defendant maintains an office or employees within the forum state; (3) whether the defendant sends agents into the forum state to conduct business; (4) whether the defendant advertises or solicits business in the forum state; and (5) whether the defendant has designated an agent for service of process in the forum state. *Id.* None of these factors supports a finding that the Court has general jurisdiction over Defendant. Defendant has no offices or employees in Illinois, does not send agents to Illinois, does not advertise or solicit business in the state, and has no agent for service of process in Illinois. (R. 56 at 7-8, 14.) More generally,

5

Erdemir submits that it does not conduct business in Illinois. (*Id.* at 13-16.)

Plaintiff raises only two arguments why the Court has general jurisdiction over Erdemir. (R. 53 at 22-23.) First, Corus asserts that "Erdemir is one of the world's largest steel producers and there is no question Erdemir does a tremendous amount of business in the United States and, in recent years, has sold billions of dollars of steel to customers within this country." (*Id.* at 23.) Even if this characterization is accurate, however, it is irrelevant to the question whether a court sitting in Illinois has general jurisdiction over the company. The issue is whether Erdemir has "continuous and systematic business contacts" with Illinois, not whether it has such contacts with the larger United States. *Helicopteros*, 466 U.S. at 415-16.

Plaintiff's second argument is that "Erdemir's discovery production reveals that Erdemir regularly contracts with vendors within Illinois for services and goods," which is sufficient to establish general jurisdiction. (R. 53 at 23.) The most that that discovery reveals, however, is that, from 2005 to 2010, Erdemir made purchases from eight Illinois vendors. (R. 53-5 at 20.) It also reveals that Erdemir referred to itself and "LA-CO Markal"—which Plaintiff characterizes as an Illinois-based company (R. 53 at 23)—as having "been in a very long business relationship." (R. 53-6 at 1.)

As Defendant correctly points out, however, it is well established that mere purchases from a company in a particular state do not, in themselves, grant courts in that state general jurisdiction over the foreign purchaser. (R. 56 at 14-22 (citing *Helicopteros*, 466 U.S. at 414-18; *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 612 (5th Cir. 2008); *Cont'l Cas. Co. v. S. Co.*, 284 F. Supp. 2d 1118, 1124 (N.D. Ill. 2003); *MAC Funding Corp. v. Ne. Impressions, Inc.*, 215 F. Supp. 2d 978, 980 (N.D. Ill. 2002)) (other case citations omitted).) The evidence relied

on by Corus merely reveals that Defendant purchased a small quantity of goods from a number of companies based in Illinois over a five-year period. Indeed, Erdemir points out that those goods represent merely one-third of a percent of the supplies it has purchased from U.S. vendors. (R. 56 at 14.) As the cases cited by Erdemir establish, such evidence does not demonstrate that courts in Illinois have general jurisdiction over Defendant. (*Id.* at 15 (citing *Helicopteros*, 466 U.S. at 418; *Rosenburg Bros. & Co. v. Curtis Brown Co.*, 260 U.S. 516 (1923); *In re Chocolate Confectionary Antitrust Litig.*, 641 F. Supp. 2d 367, 389 (M.D. Pa. 2009); *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 612 (5th Cir. 2008); *Cont'l Cas. Co. v. S. Co.*, 284 F. Supp. 2d 1118, 1124 (N.D. Ill. 2003); *MAC Funding Corp. v. N.E. Impressions, Inc.*, 215 F. Supp. 2d 978, 980 (N.D. Ill. 2002); and other cases).

Because the evidence does not support a finding that Erdemir has "continuous and systematic business contacts" with Illinois, the Court finds that it does not have general jurisdiction over Corus.

## II. The Court Lacks Specific Jurisdiction over Defendant

A finding that a court lacks general jurisdiction over a defendant does not necessarily mean that dismissal is proper. "More limited contacts may subject the defendant only to specific personal jurisdiction, in which case the plaintiff must show that its claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the state." *uBID*, 623 F.3d at 425. To determine whether a court has specific jurisdiction over a party, it must determine whether it is "fair and reasonable to call the defendant into the state's courts to answer the plaintiff's claim" *Id.* at 426 (citing *Int'l Shoe*, 326 U.S. at 317).)

It is clear that "[t]he existence of a contract between an out-of-state defendant and an

7

Illinois plaintiff is insufficient, by itself, to justify personal jurisdiction." *Corus Am., Inc. v. Int'l Safety Access Corp.*, No. 09-CV-1422, 2009 WL 5183834, at *3 (N.D. Ill. 2009) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985)); *see also Citadel Group Ltd. v. Wa. Reg'l Med. Ctr.*, 536 F.3d 757, 763 (7th Cir. 2008) ("[T]he formation of a the contract alone is not sufficient to confer personal jurisdiction . . ."). Plaintiff must therefore look to more than the fact of the Sales Contracts or Settlement Agreement to establish personal jurisdiction.

Courts in this district typically look to four factors in determining whether they have specific jurisdiction over defendants. These involve asking "who initiated the transaction, where the negotiations were conducted, where the parties executed the contract, and where the defendant would have performed the contract." (*Id.* at *3 (quoting *MAC Funding Corp. v. N.E. Impressions, Inc.*, 215 F. Supp. 2d 978, 981 (N.D. Ill. 2002).) None of these factors supports a finding that the Court possesses specific jurisdiction over Defendant in this case. This holds true regardless of whether one views the Sales Contracts or the Settlement Agreement as the operative "transaction" for the purpose of this test.

First, there is no dispute that Plaintiff initiated the Sales Contracts by sending Erdemir a fax. (R. 23-2 at 3; *cf.* R. 23-1 (not contesting this fact); R. 1 at 2 (merely alleging that in "September and October 2008, Corus and Erdemir entered into agreements whereby Corus agreed to purchase various steel products from Erdemir").) Similarly, Plaintiff contacted Erdemir in Turkey to complain about its customer's rejection of the steel, which gave rise to the Settlement Agreement. (R. 56 at 7-8; R. 1 at 2.)

Second, the parties negotiated the Sales Contracts in Turkey. With respect to the Settlement Agreement, no meetings took place in Illinois and no Erdemir representative ever

8

traveled to Illinois (R. 53-5 at 10-11; R. 23-2 at 4), though John Caouki—Corus's Director of Global Positioning—engaged in "numerous telephone calls and emails" from Schaumburg, Illinois, with Erdemir's representatives. (R. 53-7 at 3.)

Third, the parties executed both the Sales Contracts and the Settlement Agreement in Turkey. (R. 23-2 at 21, 33 ("This agreement is considered to be executed in Turkey."); R. 1 at 2 (alleging that, at "a meeting in Turkey on or about April 7, 2009, attended by Corus and Erdemir management and representatives . . . Corus and Erdemir entered into [the Settlement Agreement]").) Fourth, and finally, both the Sales Contracts and the Settlement Agreement required Erdemir to perform in Turkey, by manufacturing the relevant steel and delivering it FOB to the "Kdz Eregli Erdemir Port, Turkey." (R. 23-2 at 3-4, 10, 24; R. 1 at 2.)

That the Court lacks specific jurisdiction over Defendant follows inexorably from the preceding, undisputed facts. Focusing on the Settlement Agreement, Corus nevertheless argues that the agreement entailed sufficient Illinois-based activities that the Court in fact possesses such jurisdiction over Erdemir. (R. 53.) Plaintiff submits that "a critical component of the Settlement Agreement involved the remarking, recertifying and reselling of the rejected steel plates to other customers." (*Id.* at 12.) As the relevant steel was in the United States, Corus points out that it had to undertake the requisite steps to resell the steel from its Schaumburg, Illinois headquarters. (*Id.*) Plaintiff then recounts a litany of actions it carried out in Illinois pursuant to the Settlement Agreement. (*Id.* at 12-14.)

The problem is that, although Plaintiff points out a large number of activities it undertook in Illinois in furtherance of the Settlement Agreement, it fails to indicate any Illinois-based action on Defendant's part. (R. 53.) It is well established that it is the defendant's forum-related

9

activities that are pertinent to personal-jurisdiction analysis. *See, e.g.*, *Burger King*, 471 U.S. at 472 (holding that specific jurisdiction over an out-of-state defendant is appropriate "if the defendant has 'purposefully directed' *his activities* at residents of the forum . . . and the litigation results from alleged injuries that 'arise out of or relate to' those *activities*") (citations omitted) (emphasis added); *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003) ("Notably, it must be the activity of the defendant that makes it amenable to jurisdiction, not the unilateral activity of the plaintiff or some other entity."); *see also Ice Consultants US, Inc. v. Microvoice Applications, Inc.*, No. 04-CV-69, 2004 WL 1114748, at *2 (N.D. Ill. May 17, 2004) ("Entering into a contract with an Illinois company, even if the Illinois company performs in Illinois, is insufficient to establish specific jurisdiction over a defendant.") (citations omitted); *Stengser v. Leadenhall Bank& Trust Co.*, No. 02-CV-8655, 2004 WL 609795, at * 5 (N.D. Ill. Mar. 23, 2004) ("The due process requirement is met if . . . the clams asserted arise or result from the defendant's forum-related activities . . . .") (citations omitted).

Corus seeks to avoid the import of the fact that it, rather than Defendant, undertook some performance in Illinois pursuant to the Settlement Agreement. Plaintiff does so by arguing that "the applicable standard for specific jurisdiction is where performance of the contract was to take place, not where the defendant necessarily performed." (R. 53 at 20.) Plaintiff cites an opinion within this district that frames the "place-of-performance" test for specific jurisdiction in general, rather than defendant-specific, terms. (*Id.* (citing *Stericycle, Inc. v. Sanford*, No. 02-CV-5200, 2002 WL 31856720, at *6 (N.D. Ill. Dec. 20, 2002) ("Relevant factors in contract cases include . . . where performance of the contract was to take place.") (citations omitted).

It is not clear, however, that *Stericycle* purports to apply a distinct standard. It merely

10

omits reference to the party whose performance courts should look to in determining the place of performance under a contract. Thus, the preceding analysis remains valid. In any event, *Stericycle* is not binding on the Court and Plaintiff's reading of it conflicts with well-established law.

Even if Plaintiff were correct in its reading of the law, however, the Settlement Agreement purports to require Erdemir to manufacture and deliver steel products to Plaintiff *in Turkey* at a discount to reflect compensation of $6,600,000 in "new business transactions." (R. 53-10 at 1-2.) Although the agreement also envisions Corus's attempting to resell the "16,500 mt plates," these actions are ancillary to the major purpose of the Settlement Agreement, which is that Erdemir compensate Plaintiff for the losses the latter experienced by the rejected plates. More fundamentally, it was Erdemir's alleged breach of its obligations under the Settlement Agreement—namely, to provide steel products at a discounted price—that gave rise to the instant lawsuit. The Complaint does not allege that either party's actions in Illinois constituted a breach of the agreement. Furthermore, Plaintiff does not attempt to argue that the traditional factors relevant to specific-jurisdiction analysis beyond "place of performance" support a finding that the Court has personal jurisdiction over Defendant in this case.

Plaintiff's proffered evidence is therefore insufficient to establish this Court's personal jurisdiction over Erdemir.[2]

---

[2] For that reason, the Court need not consider Erdemir's argument that the forum-selection clauses in the Sales Contracts require the Court to dismiss Plaintiff's lawsuit.

## CONCLUSION

Because the Court does not have personal jurisdiction over Erdemir, the Court grants Defendant's motion to dismiss, with prejudice.

Dated: February 18, 2011

        **ENTERED**

        */s/ Amy J. St. Eve*
        **AMY J. ST. EVE**
        **United States District Court Judge**